**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fornix Holdings LLC, et al., | No. CV-22-01275-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| David Pepin, | |
| Defendant. | |

Pending before the Court is Plaintiffs' motion for default judgment. (Doc. 16.) For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

On July 29, 2022, Plaintiffs initiated this action by filing a complaint against Defendant David Pepin ("Pepin"). (Doc. 1.) The complaint alleges that Plaintiff Fornix Holdings LLC ("Fornix") is the registered copyright owner of myriad audiovisual works of adult video content, which it licenses exclusively to Plaintiff CP Productions, Inc. ("CP Productions") for publication on a membership-based adult website. (*Id.* ¶¶ 2-4.) The complaint alleges that Pepin accessed 11 of Fornix's copyrighted movies through his membership on CP Productions' website, copied them, and publicly distributed them via several file-sharing websites. (*Id.* ¶ 5.)

On September 19, 2022, Plaintiffs filed an *ex parte* motion to allow alternative service. (Doc. 11.) The Court granted the motion and allowed Pepin to be served via email. (Doc. 12.)

On September 22, 2022, Plaintiffs served Pepin via email. (Doc. 13.) Thereafter, Pepin failed to respond to the complaint.

On October 20, 2022, Plaintiffs filed an application for entry of default. (Doc. 14.)

On October 25, 2022, the Clerk entered default. (Doc. 15.)

On March 17, 2023, Plaintiffs filed the pending motion for default judgment. (Doc. 16.) Pepin failed to respond.

**ANAYLSIS**

I. <u>Default Judgment Standard</u>

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II. <u>The First, Fifth, Sixth, And Seventh *Eitel* Factors</u>

"In cases like this one, in which [a defendant has] not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If Plaintiffs' motion were denied, they would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Pepin's failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 119-20 (2020).

III.   The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, Plaintiffs seek statutory damages of "$15,000 per work, totaling $165,000 for the 11 Infringed Works." (Doc. 16-2 at 11.) Plaintiffs also seek attorneys' fees in an amount to be determined following entry of judgment. (*Id.* at 11-12.)

Plaintiffs' claim for statutory damages arises under 17 U.S.C. § 504(c)(1), which provides that

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If the copyright owner proves that the infringement "was committed willfully," the Court "in its discretion" may award up to $150,000; if the infringer proves a lack of awareness that his or her acts constituted infringement, the Court may award as little as $200. *Id.* § 504(c)(2).

As the statutory language makes clear, the Court possesses wide discretion in determining the amount of statutory damages to award in this case. Where the Court has the discretion to reduce a monetary award to a less substantial sum, the fourth *Eitel* factor becomes neutral. *Twitch Interactive, Inc. v. Johnson*, 2018 WL 1449525, *8 (N.D. Cal. 2018).

IV.   The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id*.

Here, these factors weigh in favor of granting default judgment. "A prima facie case of infringement . . . requires only that a plaintiff demonstrate ownership of the copyright at issue, a violation of an exclusive right set forth in copyright, and causation by the defendant." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1080 (9th Cir. 2021). The complaint sufficiently alleges facts establishing these elements. (Doc. 1 ¶¶ 2, 5-6.)

V.   Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate.

VI.   Damages

As noted above, Plaintiffs seek "$15,000 per work, totaling $165,000 for the 11 Infringed Works." (Doc. 16-2 at 11.) Plaintiffs seek to justify this figure, in part, by arguing:

> Plaintiffs' investigation reveals that the Infringed Works have been freely viewed or downloaded for hundreds of times. The most-infringed Work has been viewed or downloaded for 1,415 times without Plaintiffs' authorization. If each of these views was made on the GHS Website, Plaintiffs would have obtained 1,415 more memberships. Even if calculated with Plaintiffs' lowest-tier membership, which comes at $79.95 for 3 months, Pepin's infringing conduct has caused Plaintiffs lost profits of at least $113,129.25.

- 4 -

(*Id.* at 9.)

"The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Recs. Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). "When considering the proper amount of damages, the Court takes into account the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct." *Crim. Prods., Inc. v. Gunderman*, 2017 WL 664047, *3 (W.D. Wash. 2017) (citations and internal quotation marks omitted).

The complaint alleges that Pepin may have shared infringing works in online forums in exchange for forum "credits" to obtain other copyrighted works. (Doc. 1 ¶ 40.) In other words, Pepin's reward for infringing may have been the ability to view a small amount of free adult material. Pepin may have also earned paltry amounts of money for his infringing conduct, although this is not conclusively established by the allegations in the complaint. The complaint alleges that, "[f]or example," a file-sharing site called "DoodStream" advertises that users may earn "up to $33 for 10k views," but there is no direct allegation that Pepin uploaded any of the infringing material to DoodStream. (*Id.* ¶¶ 46-47.)

This conduct is on the less-serious side of infringement actions. For example, four months before filing this action, Plaintiffs filed another action, *Fornix Holdings LLC et al v. Unknown Party*, 2:22-cv-00494-DLR, in which they allege that the defendant operates a website that hosts a "comprehensive" "collection of links to monetized copies" of Plaintiffs' trademarked works and "uses Plaintiffs' trade name . . . as a prominent category and tag that allow visitors to select only Plaintiffs' Works to view." (2:22-cv-00494-DLR, Doc. 36 ¶¶ 57, 68.) Plaintiffs further allege in that action that the defendant disguises his identity so he can use a 3-month membership to Plaintiffs' service to copy the weekly video Plaintiffs release and then release a batch of stolen videos to his own website every 12-14 weeks. (*Id.* ¶ 80.) In contrast, here Pepin had relatively little to gain from the infringement and the infringement was less methodical and pervasive.

The Court is also unpersuaded by Plaintiffs' contention that Pepin's conduct has caused them to suffer over $113,000 in lost profits (which figure, in turn, helps justify the amount of statutory damages being sought). The difficulty with Plaintiffs' argument is that it assumes all of the individuals who viewed or downloaded, for free, the material that Pepin uploaded would have also agreed to pay $79.95 to view that material. But it is more likely that most (if not all) of these individuals would have simply declined to proceed if the only option was to pay $79.95.

"Courts considering similar infringement actions regarding unauthorized online distribution of copyrighted material have found statutory damages between $750.00 and $2,250.00 per infringing work to be reasonable." *Malibu Media, LLC v. Sianturi*, 2017 WL 3328082, *5 (E.D. Cal. 2017) (citation omitted). "Further, courts routinely award minimum statutory damages as part of default judgments in copyright infringement actions." *Id.*

The Court concludes that the statutory minimum of $750 per infringement, for a total of $8,250, is an appropriate award of statutory damages in this case.

VII.    Permanent Injunction

"[T]he Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (quoting 17 U.S.C. § 502(a)). But the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 392-93.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public

interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.

Plaintiffs have not established that there is any ongoing infringement by Pepin to enjoin. Rather, Plaintiffs ask the Court to "delete and destroy any copies of Plaintiffs' works in his storage, whether physical or digital." (Doc. 16-2 at 13.)

Plaintiffs acknowledge that "to obtain injunctive relief, a plaintiff must show . . . that remedies available at law, such as monetary damages, are inadequate to compensate for that injury" and argue that they cannot "determine the exact number of infringing instances" or "quantify the loss of profits or memberships," such that "no monetary damages are adequate to compensate Plaintiffs for Pepin's infringement." (*Id.* at 12.) Plaintiffs appear to overlook that statutory damages provide some compensation (if not perfect compensation) in such a circumstance.

Plaintiffs have not met their burden for obtaining a permanent injunction.

VIII. Attorneys' Fees

Plaintiffs also request attorneys' fees and costs pursuant to 17 U.S.C. § 505. Under that statute, the Court "in its discretion may allow the recovery of full costs" and "a reasonable attorney's fee to the prevailing party as part of the costs." "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). In exercising that discretion, district courts are given "wide latitude." *Enter. Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997). Courts consider the following non-exhaustive list of factors when determining whether to grant attorneys' fees: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Id.*

Here, Plaintiffs prevailed on their copyright infringement claims, which shows that those claims weren't frivolous. Plaintiffs also acted with appropriate motives—one of the Copyright Act's goals "is to discourage infringement," *Fogerty*, 510 U.S. at 526, and this suit does that. Plaintiffs were left with no choice but to pursue this lawsuit after Pepin

ignored attempts to contact him. Finally, Pepin asserted no factual or legal arguments (and therefore the non-existent arguments are neither reasonable nor unreasonable). Thus, the first four relevant factors weigh in favor of granting attorneys' fees.

The final factor is neutral. On the one hand, the award of $8,250 in statutory damages should, standing alone, be enough to deter future misconduct by Pepin. On the other hand, it is not clear that such a sum would alone be sufficient to provide adequate compensation to Plaintiffs. Even though, as stated above, the Court is not convinced that Pepin's conduct caused Plaintiffs to sustain $113,000 in damages (or anything close to that figure), the need to provide adequate compensation would not be met if the Plaintiffs' request for attorneys' fees were denied and those fees exceeded (or even approached) the relatively small sum of statutory damages that Plaintiffs have been awarded. Such an outcome would also be suboptimal from a general deterrence perspective—if copyright holders such as Plaintiffs lack adequate financial incentives to bring this sort of lawsuit, infringers like Pepin will escape liability.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for default judgment (Doc. 16) is **granted in part and denied in part**. A separate judgment will issue, after which the Clerk of Court shall terminate this action.

**IT IS FURTHER ORDERED** that Plaintiffs may file, within 14 days of entry of judgment, a motion for attorneys' fees and costs. In light of Plaintiffs' seeming practice of filing similar lawsuits against other defendants, Plaintiffs should take care to tailor the request to the fees reasonably expended in *this* case.[1]

Dated this 11th day of July, 2023.

Dominic W. Lanza
United States District Judge

---

[1] *Cf. G&G Closed Circuit Events LLC v. Espinoza*, 2020 WL 1703630, *2 (D. Ariz. 2020) ("The Court is constrained to review Mr. Riley's bill with something of a jaundiced eye because of his well-known use of boilerplate pleadings and form motions in the many hundreds of actions similar to this one that he maintains across the country.").